# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Christine Marsiglio | ) | Case No. |
| 6193 Dunbar Drive | ) | |
| Mentor, OH 44060 | ) | Judge |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| | ) | |
| Steris Corporation | ) | |
| 5960 Heisley Road | ) | |
| Mentor, OH 44060 | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREIN** |
| Please Also Serve Statutory Agent | ) | |
| CT Corporation System | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Christine Marsiglio, by and through undersigned counsel, as her complaint against Defendants, states and avers the following:

## PARTIES

1. Plaintiff Christine Marsiglio ("Marsiglio") is a resident of the city of Mentor, Lake County, State of Ohio.

2. Defendant Steris Corporation ("Steris") is an Ohio corporation, with its principal place of business located in Lake County at 5960 Heisley Road, Mentor, Ohio, 44060.

3. At all times herein, Marsiglio was acting in the course and scope of her employment.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000 in that Plaintiff is alleging a Federal Law Claim under the Civil Rights Act.

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-2, *et seq*.

6. This Court has personal jurisdiction over Steris because it is a Corporation that is registered to conduct business in this District, and at all times material to the allegations contained herein, each conducted substantial business in this District and had sufficient minimum contacts within this District.

7. All material events alleged in this Complaint occurred in Lake County.

8. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391, because it is the district court of the district, division, and county within which Defendants operated and where a substantial part of the events or omissions giving rise to the claim occurred.

9. Within 180 days of the conduct alleged below, Marsiglio filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Charge No. 532-2020-00647 ("Marsiglio EEOC Charge of Discrimination").

10. More than 180 days has passed since Marsiglio filed the Marsiglio EEOC Charge of Discrimination.

11. On April 8, 2021, the EEOC issued and mailed a Dismissal and Notice of Rights letter regarding the Marsiglio EEOC Charge of Discrimination.

12. Marsiglio received the Dismissal and Notice of Rights letter from the EEOC, in

accordance with 42 U.S.C. § 2000e-5(f)(1), which is attached hereto as Exhibit 1.

13. Marsiglio has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

14. Marsiglio has filed this Complaint within 90 days of the issuance of the Dismissal and Notice of Rights letter.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. The Plaintiff is a former employee of Steris.

16. The Plaintiff was hired by Steris in December 2017.

17. The Plaintiff worked as a Contract Specialist.

18. Edward Nageotte is the Contract Specialist/ Manager at Steris.

19. Cara Frisby is the Life Science Director at Steris.

20. Sherry Gallagher is a Human Resource Representative at Steris.

21. The Plaintiff reported to Mr. Nageotte and Ms. Frisby.

22. At no time during her employment with Steris did the Plaintiff receive a copy of Steris's harassment policy.

23. After she started her employment, the Plaintiff learned that the position of Contract Specialists had a high turnover rate.

24. The Plaintiff was hired as a Contract Specialist even though Steris had full knowledge that she was not an attorney.

25. When hired, the Plaintiff was informed by Mr. Nageotte that this position takes three years to master.

## THE ABUSIVE AND ILLEGAL TREATMENT BY PLAINTIFF'S DIRECT SUPERVISORS

26. After just a few months of employment at Steris, Plaintiff's co-workers would mention that they were surprised that she had "lasted that long" under Mr. Nageotte's supervision.

27. Soon after her hiring, the Plaintiff also learned that she was only the second direct report of Mr. Nageotte.

28. Within the first month of her employment, the Plaintiff learned that the attorney that had held the position immediately before her was terminated and that legal action against Steris for discrimination was on going.

29. Almost immediately after beginning her employment at Steris, Mr. Nageotte began making discriminatory, unprofessional, and discriminatory statements to the Plaintiff.

30. Some of these statements were discriminatory based on the Plaintiff's sex.

31. Mr. Nageotte once asked the Plaintiff about her sexual orientation because of the shortness of her hair.

32. Mr. Nageotte asked this question as he was trying the learn of the Plaintiff's sexual orientation as Steris was involved in a Civil Rights discrimination lawsuit based on sexual orientation.

33. This litigation had been brought by the Contract Specialists that had immediately held the position that the Plaintiff then held.

34. Mr. Nageotte stated he hoped that Plaintiff's orientation would somehow be favorable to Steris and him in that litigation.

35. Mr. Nageotte also made derogatory comments to the Plaintiff based on her sex.

36. Mr. Nageotte would also make derogatory and condescending comments to the Plaintiff.

37. Within the first six months of her employment, the Plaintiff confronted Mr. Nageotte about his confrontational management style; Mr. Nageotte noted that his management

Case: 1:21-cv-01293-CAB Doc #: 1 Filed: 07/05/21 5 of 10. PageID #: 5

style was to "manage by fear."

38. The Plaintiff, on more than one occasion, and commencing within a few months of her hiring, reported Mr. Nageotte's behavior to Cara Frisby.

39. Ms. Frisby was Mr. Nageotte's supervisor and could have curtailed his unprofessional behavior but did little to stop it.

40. Ms. Frisby had full knowledge of Mr. Nageotte's behavior and merely told the Plaintiff "she knows what it is like to be on the other side of Ed."

41. On another occasion, Ms. Frisby told the Plaintiff "not let Ed treat you that way."

42. While recognizing Mr. Nageotte's discriminatory sexist intent, Ms. Frisby told the Plaintiff, "Ed treats you like his daughters."

43. On another occasion, Ms. Frisby told the Plaintiff to 'stop having Ed treat you like his secretary."

**PLAINTIFF'S REPORTS TO OTHER MANAGERS**

44. Even though the Plaintiff had discussed Mr. Nageotte's treatment with Ms. Frisby, she also went to two Human Resource Representatives.

45. During the span of her employment, the Plaintiff reported Mr. Nageotte's behavior to Sherry Gallagher.

46. The Plaintiff also informed Ms. Gallagher of the comment about her lasting the longest under Mr. Nageotte.

47. Upon information and belief, no investigation was performed and no feedback was given to the Plaintiff after she reported these matters to Ms. Gallagher.

48. Sometime in September 2019, the Plaintiff also reported Mr. Nageotte's behavior to another Human Resource Manager Ms. Goodwyn.

49. Ms. Goodwyn explained the process of filing a grievance, and that the process began by contacting the internal Human Resource Representative, which, in the Plaintiff's case, was, again, Ms. Gallagher.

50. Ms. Goodwyn explained to the Plaintiff that a grievance involved an investigation and providing feedback and follow up to the complaintant.

51. Ms. Goodwyn did communicate the grievance to Ms. Gallagher as Ms. Gallagher contacted the Plaintiff.

52. However, instead of doing an investigation, Ms. Gallagher had a lengthy meeting with the Plaintiff to discuss her work interest.

53. At no time did Steris ever perform an investigation of the matters of the grievance.

54. No investigation was performed and no feedback was given to the Plaintiff on the subject of her complaint about her treatment by her managers.

## PLAINTIFF'S REVIEWS and PERFORMANCE

55. After six months of performance, the Plaintiff received a favorable review and a modest raise in pay.

56. Part of the Manager's Feedback was that the job took two years to master.

57. She later asked for an interim review at approximately her nine-month tenure; however one was not forthcoming as Mr. Nageotte said "he was not very good at those."

58. The Plaintiff learned that the process of reviewing contracts, a central feature of her job, was done without any objective standards or protocol.

59. On more than one occasion, the Plaintiff was told, as it pertains to contract review and modification; "Ed [Nageotte] is going to do what he wants anyway."

60. Human Resource Manager Ms. Gallagher confessed to the Plaintiff that Steris had no standards for contract review as the review standards were established by Mr. Nageotte, were ever changing, and solely up to Mr. Nageotte's subjective interpretations.

61. The Plaintiff was never provided with clear guidelines as to how to review contracts.

62. Even so, as Plaintiff's employment progressed, Mr. Nageotte and Ms. Frisby began to criticize the Plaintiff for her lack of communication and attention to detail.

63. The lack of communication and attention to detail were the fault of management, and not the Plaintiff.

64. On or about January 2019, Mr. Nageotte asked the Plaintiff to modify the date on a letter than had already been signed by an authorized Steris representative.

65. Of course, the Plaintiff did not modify the date on the letter for ethical reasons that should have been obvious, which created a further barrage of verbal abuse by Mr. Nageotte.

66. The unprofessional conduct of Ms. Frisby and Mr. Nageotte continued throughout the spring and summer of 2019

67. During this time, Mr. Nageotte and Ms. Frisby would create more unfounded and subjective reasons to criticize the Plaintiff.

68. On September 6, 2019 the Plaintiff was given a Performance Plan.

69. The Performance Plan required certain performance targets be me within 90 days.

70. This performance Plan was designed to fail as it required "100% accuracy" to avoid termination.

71. The Performance Plan was pretextual as the standards of performance were subjective.

72. The Performance Plan was pretextual as the standards of performance not documented.

73. The Performance Plan was pretextual as the standards and practices of contract review

were not defined and based solely on the subjective determinations of Mr. Nageotte.

74. Other male employees in the Life Science Department did not receive the treatment that the Plaintiff received.

75. Steris terminated the Plaintiff on October 28, 2019.

**COUNT I  SEXUAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000-2-e et seq.**

76. The Plaintiff restates each and every prior allegation.

77. The Plaintiff is a member of a protected classification.

78. The Plaintiff is female.

79. Steris treated the Plaintiff differently than other similarly situated employees based on her protected classification as a female.

80. The words and actions of Mr. Nageotte demonstrated hostile discriminatory intent against the Plaintiff.

81. Steris terminated the Plaintiff without cause in violation of 42 U.S.C. §2002e-2 et seq.

82. Steris violated 42 U.S.C. §2002e-2 et seq. for providing inconsistent and subjective supervision of the Plaintiff, in a manner inconsistent with other similarly situated male employees.

83. Steris violated 42 U.S.C. §2002e-2 et seq. by evaluating Plaintiff's performance in a manner inconsistent with other similarly situated male employees.

84. Steris violated 42 U.S.C. §2002e-2 et seq. by training the Plaintiff in a manner inconsistent with other similarly situated male employees.

85. As a direct and proximate result of Steris's conduct, the Plaintiff suffered and will

continue to suffer damages, including economic and emotional distress.

**WHEREFORE THE PLAITNIFF DEMANDS THE FOLLOWING AGAINST THE DEFENDANT**

1. An award against the Defendant for compensatory and monetary damages to compensate Ms. Marsiglio for physical illness, emotional distress, loss wages, and other consequential damages in an amount is excess of $25,000.00

2. An award of punitive damages in excess of $25,000.00

3. An award of reasonable attorney fees as allowable under law.

4. An award of the costs of this action.

5. All other relief the Court deems necessary and proper.

Respectfully submitted,

/s/ Randy Vermilya Esq
(Ohio 0070617)
41 East Erie Street
Painesville, OH 44077
440.354.2029
Rvermilya@vermilyalaw.com

JURY DEMAND ENDORSED

The Plaintiff hereby demands a trial by Jury of a lawful assembly of jurors.

/s/ Randy Vermilya Esq
(Ohio 0070617)
41 East Erie Street
Painesville, OH 44077
440.354.2029
Rvermilya@vermilyalaw.com